FILED
2008 Oct-31 PM 12:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| SARAH F. MCGUIRE, | ] |
| Plaintiff, | ] |
| vs. | ] 1:07-CV-1567-LSC |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.   Introduction.

The claimant, Sarah F. McGuire, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income ("SSI"). Ms. McGuire timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. McGuire was fifty-one years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a tenth grade education. (Tr.

at 19, Doc. 8 at 3.) Her past work experience includes employment as a dishwasher, cook, and security guard. (Tr. at 19.) Ms. McGuire claims that she became disabled on July 1, 1998, due to multiple lacunar infarcts.[1] *Id.* at 12.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. § 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340,

---

[1] Claimant originally alleged she was disabled due to "headaches accompanied by loss of eyesight 'for sometimes 2 or 4 hours a day'." However, at the hearing held December 9, 2004, she amended her alleged impairments, claiming disability due only to multiple lacunar infarcts. (Tr. at 12.)

1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. § 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §

416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ determined that Ms. McGuire has not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. at 14.) According to the ALJ, Claimant's multiple lacunar infarcts are considered "severe" based on the requirements set forth in the regulations. *Id.* at 15. However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. *Id.* The ALJ did not find Ms. McGuire's allegations to be totally credible and determined that she has the following residual functional capacity: "to perform light work and light to medium work as she has done in the past." *Id.* at 17.

The ALJ concluded that Ms. McGuire retained the RFC to perform her past relevant work, either as a dishwasher, cook, or security guard. *Id.* at 18. Accordingly, the ALJ entered a finding that Claimant "has not suffered from a disability, as defined by the Act, at any time since July 1, 1998." *Id.* at 19.

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if

this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Ms. McGuire alleges that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded because she believes the ALJ failed to properly apply the three-part pain standard applied by the Eleventh Circuit. (Doc. 7 at 2.)

Claimant contends that she meets the three-part pain standard applied by the Eleventh Circuit . (Doc. 7 at 4.) In order to establish complaints of pain or other subjective symptoms, a plaintiff must show:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Although such evidence is itself sufficient for a finding of disability, the ALJ may elect not to credit the plaintiff's subjective complaints. *See Id.* If the ALJ discredits Plaintiff's subjective description of her condition, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). However, the ALJ must explicitly discredit the testimony and must articulate sufficient reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). In assessing credibility of Plaintiff's statements, factors in addition to objective medical evidence should be considered, which include daily activities, as well as medication and its effects. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987).

In this case, it is clear Ms. McGuire met the first prong of the Eleventh Circuit's pain standard.  However, the ALJ did not believe that the evidence confirmed the severity of the alleged pain arising from the condition or that any impairment of such severity could reasonably be expected to give rise to the disabling pain and other limitations alleged by Claimant.  (Tr. at 28.) Additionally, the ALJ did not find Claimant's subjective complaints to be completely credible.  *Id.*

In determining that Claimant's complaints of frequent headaches, resulting in vison loss and blackouts, were not credible, the ALJ heavily relied on a Headache Log ("the log"), kept and submitted by Claimant, in which she tracked her alleged disability from March 25, 2003, through March 1, 2004.  (Tr. at 16.)  In comparing the log to Claimant's testimony, the ALJ found several discrepancies.  The log does not corroborate Claimant's testimony as to the frequency of her headaches, mentions very little of her alleged loss of eyesight, and contains "almost no mention of blackouts." *Id.* Additionally, March 1, 2004, was the last entry in the log, causing the ALJ to question whether Claimant suffered from headaches, vision loss, or

blackouts with the frequency she claimed, or if she even suffered from them at all, after that date. *Id*.

In comparing the log to Claimant's medical records, the ALJ noted that, while the log contained around 150 entries, there was "not one piece of medical evidence that corroborates those entries." (Tr. at 16.) The ALJ then noted four specific discrepancies. *Id*. Claimant went to Citizens Baptist Medical Center Emergency Room on April 9, 2003, complaining of head, wrist, and chest pain, which she allegedly sustained from a fall on April 6, 2003. *Id*. She claimed "she fell as a result of pain from a migraine headache." *Id*. However, there is no entry in the log for April 6, 2003. On the same April 9, 2003 visit to the Emergency Room, Claimant was diagnosed with migraine headaches, however the log notes she suffered from a headache and went to the Emergency Room on April 10, 2003. *Id*. Further, Claimant saw Dr. Joseph Schnorbus, an eye doctor, on July 29, 2003, and was screened by him at 9:49 a.m. (Tr. at 17.) Although she made no mention of a headache to Dr. Schnorbus, she noted in the log that on July 29, 2003, from 11:00 a.m to 5 or 6:00 p.m., she suffered from a headache,

which caused her to go to the eye doctor. *Id*. Finally, in log entries on August 23, 24, 26, 27, and 30, 2003, Claimant noted that she "suffered from headaches ranging in duration from 2 hours to more than 24 hours," yet she went to Cooper Green Emergency Room on August 28, 2003, for psoriasis, and never mentioned headaches. *Id*.[2]

The ALJ also found it important that over the last ten years, Claimant has sought treatment for her headaches only five times: February 2, 1995, February 15, 1995, January 28, 1997, March 4, 2000, and April 9, 2003. (Tr. at 17.) Further, Claimant's sister, Betty, was present at the hearing. *Id*. Because Betty lives with Claimant, and Betty does not work, the ALJ assumed Betty could offer testimony regarding Claimant's "testimony about the frequency of headaches and the accompanying loss of vision and blackouts." However, Claimant's Representative declined the ALJ's "invitation" to take Betty's testimony, which the ALJ found "interesting." *Id*.

---

[2]As a side note, the ALJ further noted that the appearance of the diary itself was suspect. Many of the entries were written in the same color of ink and in the same handwriting, which led the ALJ to conclude the diary was a "self-serving document with groups of entries recorded well after the events they report." (Tr. at 17.)

Claimant contends that the ALJ "did not consider all established severe medical impairments," namely migraine headaches. (Doc. 7 at 11.) According to Claimant, the question that must be addressed is, "[c]ould or would the severe impairment described by the ALJ in his decision - multiple Lacunar Infarcts [R. 19], likely be the cause of the plaintiff's subjective symptomatology?" (Doc. 7 at 8.)[3]  Although Claimant was diagnosed as suffering from severe migraine headaches (Doc. 7 at 10, Tr. at 189, 191), this Court has concluded the ALJ was correct in determining that Claimant's testimony regarding her "subjective symptomatology," i.e., severe headaches, is not entirely credible.  Therefore there is no need to address this issue posed by Claimant.

For the above-stated reasons, the Court is of the opinion that the ALJ had good cause for not finding Plaintiff's claims of disability credible.  The ALJ properly set out the reasons for his findings.

---

[3]Plaintiff claims a treatise, *Stroke-Related Headache: A Clinical Study in Lacunar Infarction,*" addresses Lacunar infarctions and the relation to plaintiff's symptoms, and that this treatise, along with the evidence "satisfy the criteria for establishing disability under the pain standard."  (Doc. 7 at 9-10.)  However, this treatise is not part of the original record before the ALJ.  Therefore, this Court will not take said treatise into consideration.

IV.     Conclusion.

Upon review of the administrative record, and considering all of Ms. McGuire's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 31st day of October 2008.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671